## In re PERRY ALDRICH CO.

### No. 13,634.

### (District Court, D. Massachusetts. September 28, 1908.)

1. BANKRUPTCY (§ 16*) — JURISDICTION OF COURT — FOREIGN CORPORATION — "PLACE OF BUSINESS" — "DOING BUSINESS."

A petition in involuntary bankruptcy was filed in the district of Massachusetts against a Maine corporation, which had carried on the mercantile business for which it was incorporated in Boston. About six months prior to the filing of the petition it sold the most of its stock in trade and gave up its place of business, and two months later receivers were appointed by a court of Maine, who took charge of and kept its remaining property in Boston. *Held*, that the corporation was not "doing business" in any proper sense after the appointment of the receivers, and had not had its principal "place of business" in Massachusetts for the greater part of the six months preceding the filing of the petition, within the meaning of Bankr. Act July 1, 1898, c. 541, § 2 (1), 30 Stat. 545 (U S Comp. St. 1901, p. 3420), and that the court in that district was without jurisdiction of the proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160; vol. 8, pp. 7640, 7641; vol. 6, pp. 5390–5392.]

2. BANKRUPTCY (§ 16*) — JURISDICTION OF COURT — FOREIGN CORPORATION — PLACE OF BUSINESS.

In determining whether a corporation has had its principal place of business in another state, so as to give the court in that district jurisdiction to adjudicate it a bankrupt, it is immaterial whether or not it complied with the laws of that state to entitle it to do business therein as a foreign corporation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 16.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

3. BANKRUPTCY (§ 63*) — INVOLUNTARY PROCEEDINGS — ACTS OF BANKRUPTCY — RECEIVERSHIP — "BECAUSE OF INSOLVENCY."

The appointment of receivers to take charge of the property of a corporation at suit of a stockholder, who alleged fraud and mismanagement by the officers and that the corporation was in danger of insolvency, but not that it was insolvent, cannot be said to have been "because of insolvency," so as to constitute an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541 § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1091, p. 3422) as amended in 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1025]).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 63.*]

---

4. BANKRUPTCY (§ 79*)—INVOLUNTARY PROCEEDINGS—ACTS OF BANKRUPTCY—
RECEIVERSHIP—"PUT IN CHARGE."
      Receivers are "put in charge" of the property of a defendant, within
the meaning of Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U.
S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, c. 487, 32
Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1025), when the decree ap-
pointing them is entered, although they do not qualify nor take actual
possession of the property until later, and the four-months period with-
in which a petition in bankruptcy based on such appointment as an act
of bankruptcy must be filed runs from the date of such decree.
      [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 79.*]

In Bankruptcy. On involuntary petition.

Fred L. Norton, for petitioner.
Eugene C. Upton and George F. Haley, for respondents.

DODGE, District Judge. This involuntary petition, filed April 17,
1908, alleges the commission of a single act of bankruptcy, viz., that on
or about December 21, 1907, because of insolvency, receivers were put
in charge of the alleged bankrupt's property, by the Supreme Judicial
Court of the state of Maine, under the laws of that state. The al-
leged bankrupt answered May 1, 1908, denying that its principal place
of business was within this district for the greater portion of the six
months ending with the filing of the petition, and denying, also, that it
committed the act of bankruptcy alleged within four months before
the filing of the petition. A similar answer was filed on the same day
by an alleged creditor.

Under a reference to ascertain and report the facts, the referee's
report has been in favor of adjudication on both the above questions.
The answers also denied that the petitioners were creditors having
unsecured provable claims amounting to $500 in all; but this, accord-
ing to the report, seems to have been waived at the hearing.

1. The question as to the jurisdiction of this court turns on the fol-
lowing facts, which I find: The respondent was a Maine corporation,
but at its Maine office in Kittery did nothing except hold its annual
meetings. Its business of dealing in jewelry it had carried on in Bos-
ton, in offices of its own, where it had a stock in trade worth $5,000
or more, until about the end of October, 1907. It then sold out all
but a comparatively insignificant part of its stock, gave up its former
place of business, and thereafter had no other place of business in
Massachusetts, except a room occupied, used, and paid for by another
concern whereof its own treasurer was also treasurer. To this room
its remaining stock, worth from $200 to $300, and its fixtures, were
removed from its former location. In this room its treasurer there-
after attended to its affairs; its name being upon a card attached to
the outside of the door. There he received its mail and telephone mes-
sages, made some small sales from its stock, made some collections of
amounts due it, sent out articles from its stock by traveling salesmen
having their headquarters at the same room, answered inquiries, and
negotiated settlements regarding its affairs. Some of its fixtures were
used by the concern to which the room belonged, and some were kept
there on storage. What its treasurer did there on its behalf from and

after December 18, 1907, at latest, he did under the authority and with the approval of receivers appointed by the Supreme Judicial Court of Maine, in equity proceedings against it in that court which are more fully referred to below. An injunction issued in those proceedings November 22, 1907, forbade the respondent corporation to proceed any further with its business during the pendency of the case. Whatever the extraterritorial effect of this injunction, it does not appear that the corporation or its treasurer ever undertook to dispute its authority in any of their subsequent doings in Massachusetts. The receivers took possession of its property in Boston December 18, 1907. They instructed its treasurer to retain custody of the stock and fixtures, make sales and collections, and look after the mail. He acted in accordance with the instructions given him until the present petition was filed. The receivers had no authority to carry on the business of the corporation, nor did they ever undertake to carry it on. All they were directed by the court to do, or undertook to do, was to collect and hold its assets until otherwise ordered.

I do not think the corporation can be said to have been "doing business" in any proper sense after December 18, 1907. As against the petitioning creditors it might be estopped to deny that it had ceased doing the business in which their debts were contracted. Tiffany v. La Plume Milk Co. (D. C.) 141 Fed. 444. But another creditor would not be thus estopped, and as against him I do not think the facts proved establish the jurisdiction of this court. The corporation was not continuing the business it had been organized to do, nor was it liquidating its affairs of its own accord through officers of its own selection. It had been ordered by a court having the right to do so to stop doing that business; and acts done thereafter, merely in order to collect its assets or turn them into money, by officers of that court, cannot, as it seems to me, be what is intended by "business" in the expression "principal place of business," as used in the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). The petitioners might perhaps have obtained jurisdiction here by filing their petition within three months following December 18th. That period having expired, it seems to me no longer possible to bring the case within the language of section 2 (1). I agree with the petitioners that it is wholly immaterial whether the corporation had or had not filed the certificates required of a foreign corporation by the laws of Massachusetts.

2. But, even if the court has jurisdiction, it remains to be decided whether the act of bankruptcy charged has been proved. This question depends upon the following facts, which I find:

A stockholder, on his own behalf and on behalf of all other stockholders who might join, filed his bill in equity against the corporation November 11, 1907, in the Supreme Judicial Court of Maine for York county, whose jurisdiction is not disputed.

The bill alleged that the corporation was "in eminent danger of insolvency," but nowhere alleged that it was insolvent. It charged fraud, neglect, and mismanagement on the part of the officers, and set forth that by reason thereof there was danger of depreciation, waste, and loss of the assets if the officers were allowed further control. It prayed

that the corporation and its officers might be enjoined from receiving or paying out its moneys, selling or transferring its assets, or exercising any of its privileges or franchises, and that receivers might be appointed to wind up its affairs. Exhibit 1, a copy of the bill, may be referred to.

A subpoena was issued upon the filing of the bill, returnable January 7, 1908; also notice to show cause why a temporary injunction should not issue, returnable November 18, 1907. A hearing was had pursuant to this notice on November 22, 1907, and on December 3, 1907, the court entered a decree, a copy whereof is Exhibit 2, and may be referred to. The decree recites that it was made "after hearing the arguments of counsel and by agreement of parties." It ordered an injunction restraining the corporation from proceeding with its business pendente lite. It appointed two receivers, to receive, collect, and take possession of the corporation property, ordered it to deliver all its property to them, and directed them to report for the court's direction all the corporation's rights or causes of action, as also all their own doings. It provided that the receivers and the parties to the case should be at liberty to apply from time to time for the court's orders and direction.

The court on December 21, 1907, approved the receivers' bonds, filed the same day. An answer to the bill was filed January 4, 1908. A report of the receivers was filed January 30, 1908. A special master was appointed March 4, 1908. No further action by the court appears, prior to the filing of the present petition.

It seems to me clear that the papers in the case wholly fail to show that the receivers appointed were put in charge of the defendant's property "because of insolvency." It is impossible to say, on what appears from them, that insolvency, as defined in the bankruptcy act, was one of the grounds upon which the court acted in making its decree. The allegations of the bill do not imply insolvency. They go no further than to say that there is danger of insolvency—in what sense is left uncertain. Whatever the kind of insolvency meant, the inference is that it does not yet exist.

Whether the corporation was actually insolvent or not when the bill was filed or the receivers appointed under it seems to me wholly immaterial, unless it can also be made to appear that the court so found, either upon the evidence before it or the agreements of the parties, and made the fact at least one of the grounds of its action. In this case the deposition of the learned justice of the Maine Supreme Court, who heard the case and made the decree appointing the receivers, has been taken by the parties opposing adjudication, and is before me. It leaves no doubt whatever in my mind, not only that he understood both parties to say that the corporation was then solvent, but that he told counsel at the hearing that if a receivership was desired on the ground of insolvency it probably could not be granted, in view of the decision, then recent, in Moody v. Port Clyde Development Co., 102 Me. 365, 66 Atl. 967, and that, as he expressly states, he did not appoint the receivers by reason of the corporation's insolvency. It seems to me clear that such insolvency entered in no way into the result arrived at by the court. In view of this deposition, it seems to me idle to dis-

cuss or consider any evidence as to what was or was not said by counsel, witnesses, or parties at the hearing. If any one of them stated or argued that the corporation was insolvent, they must have done so without affecting in any way the action of the court.

I am of opinion, in any case, that the receivers were "put in charge" of the corporation's property on December 3, 1907, when the decree appointing them was entered. This petition was not filed until after four months from that day had expired. The words of section 3a (4) of the bankruptcy act appear to me to refer to the action of the court in establishing the receivership, so as to make the act of bankruptcy complete when that action has been taken. If these receivers had been put in charge because of the corporation's insolvency, a bankruptcy petition against it on that ground could have been maintained, as it seems to me, before the receivers had actually qualified and taken possession. The facts that the receivers here did not qualify until December 21, and that the petition was filed within four months from that date, I should be unable to regard, in any event, as sufficient to sustain the petition.

It follows that adjudication must be denied, and the petition dismissed.